# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | |
|---|---|
| Manuel Esquivel, individually and as a representative of a class of similarly situated persons, on behalf of the WHATABURGER 401(k) SAVINGS PLAN (f/k/a the Whataburger Profit Sharing and 401(k) Savings Plan), | Case No. 5:24-cv-310-XR |
| Plaintiff, | |
| v. | |
| WHATABURGER RESTAURANTS LLC; THE BOARD OF DIRECTORS OF WHATABURGER RESTAURANTS LLC; THE WHATABURGER 401(K) SAVINGS PLAN ADMINISTRATIVE COMMITTEE (f/k/a the Whataburger Profit Sharing and 401(k) Savings Plan Administrative Committee); and DOES No. 1–20, Whose Names Are Currently Unknown, | <u>**ORAL ARGUMENT REQUESTED**</u> |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT <u>AND MEMORANDUM OF LAW</u>**

**INTRODUCTION**................................................................................................................ 1

**STATEMENT OF FACTS**.............................................................................................. 4

    **A.**    **The General Release and Promise Not to Sue**................................................ 4

    **B.**    **Whataburger and the Plan**............................................................................... 5

    **C.**    **Plaintiff's Claims**............................................................................................ 6

**ARGUMENT**.................................................................................................................... 7

**I.**    **FRCP 12(B)(1) DEMANDS THE DISMISSAL OF THIS LAWSUIT**...................... 7

    **A.**    **Plaintiff Lacks Standing to Bring this Lawsuit Due to His General Release and Promise Not to Sue**............................................................... 7

**II.**    **FRCP 12(B)(6) DEMANDS DISMISSAL OF PLAINTIFF'S CLAIMS**................. 10

    **A.**    **Plaintiff's Allegations That Just Two Plan Investment Options Underperformed During a Narrow Time-Frame Fail to State a Claim.**...... 12

        1.    Plaintiff's Performance-Based Allegations Do Not Create an Inference of Imprudence as a Matter of Law.......................................... 12

        2.    Plaintiff's Underperformance Allegations Fail for Additional Reasons, Each of Which Independently Compels Dismissal. ................ 16

            a)    *Plaintiff's Underperformance Allegations Fail Because They Do Not Offer Meaningful Comparators for the Challenged Funds.* ...................................................................... 16

            b)    *Plaintiff Does Not Allege Substantial and Consistent Underperformance Sufficient to Support an Inference of Imprudence.* .................................................................................. 22

    **B.**    **Plaintiff Fails to State a Failure-to-Monitor Claim.**................................... 25

    **C.**    **Plaintiff Fails to State a Knowing Breach of Trust Claim.**.......................... 26

**CONCLUSION**............................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
    47 F.4th 570 (7th Cir. 2022) ............................................................11, 16

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013)......................................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................10, 22

*Bekker v. Neuberger Berman Grp. LLC*,
    2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018)............................................24

*Beldock v. Microsoft Corp.*,
    2023 WL 3058016 (W.D. Wash. Apr. 24, 2023)....................................3, 15, 25, 26

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................10, 11, 26

*Camera v. Dell Inc.*,
    2014 WL 960897 (W.D. Tex. Feb. 26, 2014)............................................25

*Chaplin v. NationsCredit Corp.*,
    307 F.3d 368 (5th Cir. 2002) .....................................................................8

*Cho v. Prudential Ins. Co. of Am.*,
    2021 WL 4438186 (D.N.J. Sept. 27, 2021) ...............................................24

*Cobb v. Cent. States*,
    461 F.3d 632 (5th Cir. 2006) .....................................................................7

*Coyer v. Univar Sols. USA Inc.*,
    2022 WL 4534791 (N.D. Ill. Sept. 28, 2022) ...........................................13

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008)....................................................................................7

*Davis v. Salesforce.com, Inc.*,
    2022 WL 1055557 (9th Cir. Apr. 8, 2022) ...............................................16

*Davis v. Washington Univ. in St. Louis*,
    960 F.3d 478 (8th Cir. 2020) ..............................................................14, 18, 22

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
   2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019)...............................................................23, 24

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014)...............................................................................................2, 9, 11

*Forman v. TriHealth, Inc.*,
   40 F.4th 443 (6th Cir. 2022) ...............................................................................3, 14, 15

*Forman v. TriHealth, Inc.*,
   563 F. Supp. 3d 753 (S.D. Ohio 2021), *aff'd*, 40 F.4th 443 (6th Cir. 2022)..........................24

*Funk v. Stryker Corp.*,
   631 F.3d 777 (5th Cir. 2011) .............................................................................................15

*Garcia v. Glob. Dev. Strategies Inc.*,
   44 F. Supp. 3d 666 (W.D. Tex. 2014) ................................................................................10

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013)..............................................................................................................10

*Hall v. Cap. One Fin. Corp.*,
   2023 WL 2333304 (E.D. Va. Mar. 1, 2023) ...........................................................18, 22, 25

*Hill v. Research Inst. of Am. Group*,
   209 F.3d 719 (5th Cir. 2000) ...............................................................................................4

*Howell v. Motorola, Inc.*,
   633 F.3d 552 (7th Cir. 2011) ...............................................................................................9

*Hughes v. Nw. Univ.*,
   595 U.S. 170 (2022)................................................................................................2, 12, 16

*Hughes v. Nw. Univ.*,
   63 F.4th 615 (7th Cir. 2023) ..............................................................................................13

*Jackson v. U.S. Dept. of Hous. and Urb. Dev.*,
   116 F.3d 477 (5th Cir. 1997) ...............................................................................................4

*Jackson v. Widnall*,
   99 F.3d 710 (5th Cir. 1996) .................................................................................................8

*Jenkins v. Yager*,
   444 F.3d 916 (7th Cir. 2006) .............................................................................................14

*Johnson v. Parker-Hannifan Corp.*,
   2023 WL 8374525 (E.D. Ohio Dec. 4, 2023) .....................................................................18

*JSW Steel (USA) Inc. v. Nucor Corp.*,
   586 F. Supp. 3d 585 (S.D. Tex. 2022) ..................................................................11

*Kirschbaum v. Reliant Energy, Inc.*,
   526 F.3d 243 (5th Cir. 2008) ....................................................... *passim*

*Laboy v. Bd. of Trs. of Bldg. Serv.*,
   513 F. App'x 78 (2d Cir. 2013) ...................................................................14

*Larson v. Allina Health Sys.*,
   350 F. Supp. 3d 780 (D. Minn. 2018)......................................................17

*Lee v. Verizon Commc'ns, Inc.*,
   837 F.3d 523 (5th Cir. 2016) ....................................................................11

*Locascio v. Fluor Corp.*,
   2023 WL 320000 (N.D. Tex. Jan. 18, 2023) ............................... *passim*

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) ......................................................................6

*Lubrizol Corp. v. Exxon Corp.*,
   957 F.2d 1302 (5th Cir. 1992) ....................................................................9

*Luckett v. Wintrust Fin. Corp.*,
   2023 WL 4549620 (N.D. Ill. July 14, 2023)....................................13, 22

*Matney v. Barrick Gold of N.A.*,
   80 F.4th 1136 (10th Cir. 2023) ..................................................3, 16, 17, 21

*Matousek v. MidAmerican Energy, Co.*,
   51 F.4th 274 (8th Cir. 2022) ..............................................................16, 17

*Meiners v. Wells Fargo*,
   898 F.3d 820 (8th Cir. 2018) ..................................................... *passim*

*Menchaca v. Chrysler Credit Corp.*,
   613 F.2d 507 (5th Cir. 1980) ......................................................................7

*Metzler v. Graham*,
   112 F.3d 207 (5th Cir. 1997) ....................................................................11

*Natl. Am. Ins. Co. v. Melancon*,
   1999 WL 600372 (E.D. La. Aug. 9, 1999) ................................................9

*Norris v. Hearst Trust*,
   500 F.3d 454 (5th Cir. 2007) ....................................................................15

*Perez v. Bruister*,
    823 F.3d 250 (5th Cir. 2016) ...........................................................................26

*Perkins v. United Surgical Partners Intl., Inc.*,
    2024 WL 1574342 (5th Cir. Apr. 11, 2024) ....................................................17

*Prop. Disclosure Techs. LLC v. Homes*,
    2015 WL 11618242 (E.D. Tex. Jan. 21, 2015)................................................10

*Russell v. Harman Int'l Indus.*,
    945 F. Supp. 2d 68 (D.D.C. 2013) *aff'd*, 773 F.3d 253 (D.C. Cir. 2014)...............10

*Singh v. RadioShack Corp.*,
    882 F.3d 137 (5th Cir. 2018) .....................................................................25, 26

*Smith v. CommonSpirit*,
    37 F.4th 1160 (6th Cir. 2022) ................................................................ *passim*

*St. Vincent Catholic Med. Ctr. v. Morgan Stanley*,
    712 F.3d 705 (2d Cir. 2013)............................................................................12

*Stanley v. George Washington University*,
    394 F. Supp. 3d 97 (D.D.C. 2019), *aff'd*, 801 F. App'x 792 (D.C. Cir. 2020)....................8, 9

*Thole v. U.S. Bank N.A.*,
    590 U.S. 538 (2020)........................................................................................10

*Tullgren v. Booz Allen*,
    2023 WL 2307615 (E.D. Va. Mar. 1, 2023) ...........................................15, 18, 26

*Wehner v. Genentech, Inc.*,
    2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ................................................17, 18

*White v. Chevron Corp.*,
    2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th
    Cir. 2018) ....................................................................................................3, 14

*Williams v. Phillips Petroleum Co.*,
    23 F.3d 930 (5th Cir. 1994) .............................................................................8

## Statutes

29 U.S.C. § 1104......................................................................................................7, 11

## Other Authorities

Rule 12(b)(1)...........................................................................................................1, 4, 7

Rule 12(b)(6)...................................................................................................... *passim*

Defendants Whataburger Restaurants, LLC, the Board of Directors of Whataburger Restaurants LLC,[1] and the Whataburger 401(k) Savings Plan Administrative Committee (collectively, "Whataburger"), by its counsel and in accordance with Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule CV-7, respectfully moves the Court to dismiss Plaintiff's Class Action Complaint (the "Complaint") because Plaintiff lacks standing and has failed to state a claim upon which relief can be granted. Whataburger requests oral argument on this Motion.

## **INTRODUCTION**

Whataburger offers a 401(k) plan to its employees (here, the Whataburger 401(k) Savings Plan, or the "Plan"). It generously contributes millions of dollars to this Plan, and the Plan's thousands of participants can select from an array of investment options to help save for retirement. According to Plaintiff, that was not enough. Specifically, of the *nineteen* investment options the Plan has offered throughout the putative class period, a single Plaintiff now alleges that *two* investments sometimes underperformed by modest amounts over limited time-periods. From this, Plaintiff asks the Court to infer that Whataburger breached its fiduciary duty under ERISA. Circuit courts across the country, and a district court in Texas, have dismissed similar claims on the pleadings. The Court should do the same here for the same reasons—and more.

***First***, under Rule 12(b)(1), Plaintiff lacks standing to bring this lawsuit. In exchange for over $26,000, Plaintiff Manuel Esquivel signed a severance agreement releasing "Whataburger" and "fiduciaries and others affiliated with Whataburger's benefit plans" from "all claims of any type," including those for "fiduciary breach" under "the Employee Retirement Income Security Act" and "any claims for damages." *See* Ex. 1, Declaration of Jeremy Blumenfeld, Ex. A (Esquivel

---

[1] This entity does not exist.

Separation and Release Agreement, referred to hereinafter as the "Severance Agreement") at 2.[2] Plaintiff also gave up any right to participate in any "class or collective action" or seek recovery "on behalf of another person or entity." *Id* (collectively, "General Release"). And separate and apart from the General Release, Plaintiff also agreed to a covenant not to sue Whataburger or its fiduciaries in court and waived any "claims for damages in an individual capacity or on behalf of another person or entity." *Id*. at 5 ("Promise Not to Sue"). Plaintiff's Complaint violates both the General Release and, separately, the Promise Not to Sue. Plaintiff signed the release "knowingly and voluntarily," *id.* at 7, and it covers the claims at issue here. The General Release and Promise Not to Sue thus each independently operate to bar Plaintiff's lawsuit.

**Second**, even if Plaintiff had standing to bring this suit, Plaintiff's scant allegations do not state a claim under Rule 12(b)(6). ERISA's duty of prudence is rooted in conduct, not results. *See Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 253 (5th Cir. 2008)*. For that reason, the Supreme Court has emphasized that, even at the pleadings stage, district courts "must give due regard to the range of reasonable judgments a fiduciary may make," *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022), so that Rule 12(b)(6) remains an "important mechanism" for "weeding out meritless" claims against ERISA plan fiduciaries, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Here, the Complaint is devoid of allegations about Whataburger's fiduciary process for overseeing the Plan's investment options.

Instead, Plaintiff merely alleges that **just two** of the nineteen investments in the Plan since 2018 occasionally underperformed a few cherry-picked alleged comparators. These allegations do not state a claim because, as a matter of law, ERISA does not require fiduciaries to choose the best-performing investments, and allegations of imprudence cannot "come down to simply

---

[2] Documents attached as exhibits to the Declaration of Jeremy Blumenfeld are hereinafter cited as "Ex. __".

pointing to a fund with better performance." *Smith v. CommonSpirit*, 37 F.4th 1160, 1166 (6th Cir. 2022) (affirming Rule 12(b)(6) dismissal because "merely pointing to another investment that has performed better in a . . . snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that breaches a fiduciary duty"). As the Tenth Circuit held in affirming dismissal under 12(b)(6), "[i]t is *uniformly recognized* imprudence cannot be inferred based solely on allegations identifying the existence of . . . better performing alternative funds." *Matney v. Barrick Gold of N.A.*, 80 F.4th 1136, 1154 n.15 (10th Cir. 2023) (collecting cases) (emphasis added); *see also Forman v. TriHealth, Inc.*, 40 F.4th 443, 448-49 (6th Cir. 2022) (same, because "a showing of imprudence cannot 'come down to simply pointing to a fund with better performance'") (citation omitted); *Meiners v. Wells Fargo*, 898 F.3d 820, 823 (8th Cir. 2018) (same, because "[n]o authority requires a fiduciary to pick the best performing fund"). To the contrary, "courts across the country have rejected claims for breach of the fiduciary duty of prudence under ERISA where the plaintiffs allege nothing more than underperformance relative to other investment vehicles." *Beldock v. Microsoft Corp.*, 2023 WL 3058016, at *3 (W.D. Wash. Apr. 24, 2023) (collecting cases); *infra* at 15-23.

This result makes sense, and is even required by the very nature of investing. As the Fifth Circuit explained, "[r]etirement investing" involves a "long-term horizon," *Kirschbaum*, 526 F.3d at 253-54, and performance fluctuations are common. Thus, an allegation of "[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to prudently select or monitor investments. *White v. Chevron Corp.*, 2017 WL 2352137, at *20 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453, 455 (9th Cir. 2018). Plaintiff alleges nothing more, and his underperformance claim must be dismissed for this reason alone. *See* Compl. ¶¶ 31-58.

As explained in more detail below, Plaintiff's allegations are plagued with other problems. Even if underperformance alone could somehow be enough for the Court to infer a flawed fiduciary process, such alleged underperformance must be substantial, consistent, and long-term, as compared against a "meaningful benchmark." *Infra* at 15-23. Plaintiff has alleged nothing of the sort. He has simply alleged that just two of the Plan's nineteen investments experienced some small, intermittent performance fluctuations when compared to a few other funds in the market. There is no basis to infer that Whataburger's fiduciary process fell outside the range of reasonable judgments a fiduciary may make.

The Complaint should be dismissed.

## STATEMENT OF FACTS

### A.     The General Release and Promise Not to Sue

Plaintiff, a former Plan participant, last worked at Whataburger on March 3, 2023. Compl. ¶ 8; Ex. A at 1.[3] As part of his separation, Plaintiff "knowingly and voluntarily" entered into the Severance Agreement, effective March 15, 2023. *Id*. at 7.[4] As consideration, Plaintiff received (1) severance pay of $18,596.86, (2) a COBRA payment of $6,443.99, and (3) an "Additional Consideration Payment" of $1,729.16. *Id*. at 1. In exchange for this $26,777.01 payment, Plaintiff agreed to a General Release and a separate Promise Not to Sue. *Id*. at 2-3.

---

[3] In connection with its 12(b)(1) motion, Whataburger attaches Plaintiff's executed Severance Agreement. The Court may consider the Severance Agreement because "a district court is entitled to review outside materials when resolving a 12(b)(1) motion for lack of subject-matter jurisdiction." *Jackson v. U.S. Dept. of Hous. and Urb. Dev.*, 116 F.3d 477 (5th Cir. 1997). *See also Hill v. Research Inst. of Am. Group*, 209 F.3d 719 n.1 (5th Cir. 2000) (a "district court's consideration of evidence outside of the pleadings does not serve to transform [a] Rule 12(b)(1) motion into a motion for summary judgment").

[4] The Severance Agreement errantly labels pages two through seven all as page five. Whataburger cites to the Agreement's PDF page numbers.

As to the General Release, Plaintiff agreed to release Whataburger, including "fiduciaries and others affiliated with Whataburger's benefit plans," "from all claims of any type to date." *Id.* at 3. The General Release expressly stated that "[t]his means you give up *all claims and rights related to*: . . . *fiduciary breach* . . . *under the Employee Retirement Income Security Act*." *Id.* (emphasis added). Plaintiff further agreed to forgo all claims and rights related to "any participation in any class or collective action against any Releasee," which, as mentioned, includes Whataburger and its fiduciaries. *Id.* Finally, Plaintiff agreed to give up "claims for damages in an individual capacity or on behalf of another person *or entity*." *Id* (emphasis added).

Plaintiff also entered into a separate Promise Not to Sue, which "is different from the General Release." *Id. See also id.* (the Promise Not to Sue is "[b]esides" the General Release). Through the Promise Not to Sue, Plaintiff "promise[d] not to sue any Releasee [including Whataburger and its fiduciaries] in court." *Id.*  This includes (but is not limited to) a promise not to sue "for any reason" covered by the General Release, which in turn, includes "fiduciary breach" claims under ERISA. *Id.* at 2-3. Lastly, Plaintiff agreed that he "give[s] up all rights to any money or other individual relief *based on any agency or judicial decision*, including class or collective action rulings." *Id.* at 3.

Notwithstanding the General Release and Promise Not to Sue, Plaintiff sued Whataburger in court—as a representative of a putative class and on behalf of another entity (the Plan)—bringing claims under ERISA.

B.   **Whataburger and the Plan**[5]

Whataburger is a quick-service restaurant chain headquartered in San Antonio, Texas. Compl. ¶ 9. Among the many benefits it offers employees, Whataburger sponsors the Plan, a

---

[5] The remainder of the fact section comes from Plaintiff's allegations and other publicly available documents—either referenced in the Complaint or central to Plaintiff's claims—that are

401(k) plan. *Id*. Whataburger offers a generous matching contribution to employees who choose to participate in the Plan. *Id*. ¶ 17.

The Plan offers a diverse menu of investment options from which participants can choose to invest. *Id*. ¶ 17. These include a suite of target-date funds, other mutual funds that cover different asset classes, investment styles (e.g., actively managed funds and passively managed "index" funds), and risk-reward profiles (growth, developing markets, bonds, etc.). *See* Ex. B (Form 5500 Compilation). Throughout the putative class period (March 27, 2018 to the present), the Plan has offered a total of nineteen different investment options. *Id*. Whataburger has added and removed funds throughout this time, including adding nine funds and removing four funds. *Id*. Of the nineteen different funds, Plaintiff alleges that the fiduciary process was imprudent because two of them "underperformed." Compl. ¶¶ 31-58.

### C.   Plaintiff's Claims

Plaintiff challenges two funds for a portion of the putative class period: the Janus Triton Class T Fund (the "Janus Fund") and the MainStay Winslow Large Cap Growth Fund (the "MainStay Fund").

Plaintiff alleges that the Janus Fund underperformed in a narrow window in 2020 and 2021, but makes no allegations of underperformance in any other time period. Compl. ¶¶ 46-57.

---

appropriately considered on a Rule 12(b)(6) motion. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Here, the Court may properly consider the Plan's Forms 5500 filed with the U.S. Department of Labor and investment fund fact sheets and/or prospectuses. *See, e.g.*, *CommonSpirit*, 37 F.4th at 1168 (affirming Rule 12 dismissal and noting that the "district court fairly considered [data] because it was central to [Plaintiff's claim], publicly available, and judicially noticeable"); *Meiners*, 898 F.3d at 823 (affirming Rule 12 dismissal and holding district court properly considered fund prospectuses not attached to the complaint).

Plaintiff likewise alleges that the MainStay Fund performed poorly in 2018 and then again in 2022-2023, while exhibiting "improvement" in 2019 and 2020 and "outperformance over the five-year time horizon in 2021." *Id*. ¶¶ 31-45.

Based on these sparse allegations regarding just two of nineteen funds, he asks the Court to infer that Whataburger breached its duty of prudence to monitor the Plan's investment options under ERISA, 29 U.S.C. § 1104(a)(1)(A). *Id*. ¶¶ 78-82 (Count I). In Counts II and III, Plaintiff attempts to bootstrap claims entirely derivative of Count I, alleging that Whataburger failed to monitor the fiduciaries in charge of overseeing the Plan (Compl. ¶¶ 83-91, Count II) and, if a defendant is not deemed a fiduciary, that he or she participated in a knowing breach of trust (Compl. ¶¶ 92-94, Count III).

## ARGUMENT

## I.      FRCP 12(b)(1) DEMANDS THE DISMISSAL OF THIS LAWSUIT

"[T]he issue of standing is one of subject matter jurisdiction" and can be challenged under Rule 12(b)(1). *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006). Plaintiff "bears the burden of proof that jurisdiction does in fact exist" (*Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)), which includes establishing that there is "an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733-34 (2008) "The requirement that a claimant have standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id.*

### A.      Plaintiff Lacks Standing to Bring this Lawsuit Due to His General Release and Promise Not to Sue

As a threshold matter, the Complaint should be dismissed because it is independently barred by the release provisions, the covenant not to sue, and the waiver of any right to money or

any other relief in the Severance Agreement. In the Fifth Circuit, "[p]ublic policy favors . . . enforcement of releases" and covenants not to sue if they are "knowing" and "voluntary." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 373 (5th Cir. 2002) (citing *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994)).

Plaintiff executed a knowing and voluntary General Release (*supra* at 4-5), a distinct "Promise Not to Sue," and an agreement that he "give[s] up all rights to any money or other individual relief based on any . . . class or collective action rulings." *Supra* at 5. These agreements independently operate to bar Plaintiff from bringing this lawsuit.

*First*, the Fifth Circuit finds that a valid release bars claims that "fall within the subject matter of the release[]." *See Chaplin*, 307 F.3d at 376 (enforcing release of ERISA claims). Here, the release specifically covers ERISA fiduciary breach claims against Whataburger and its fiduciaries—precisely the subject matter of Plaintiff's Complaint here. *Supra* 4-5; Compl. ¶ 1. What's more, the release bars Plaintiff's participation in any class action against any Releasee and any claims "on behalf of another person or entity" against Whataburger and its fiduciaries, which are two more ways the release covers Plaintiff's putative class action claims in this case brought "on behalf of the Plan." *Supra* 4-5; Compl. ¶ 1. And Plaintiff cannot dispute that he signed the Severance Agreement or received the $26,000-plus severance package. Nor can he dispute that he signed the release "knowingly and voluntarily," as the agreement he signed says so explicitly. *Supra* at 4.

Courts have dismissed similar claims under virtually identical circumstances. *Stanley v. George Washington University* is instructive. There, the plaintiff brought a putative class against her former employer alleging breaches of fiduciary duty claims challenging the performance and fees of investment options in the George Washington University retirement plan. 394 F. Supp. 3d

97, 105, 107 (D.D.C. 2019), *aff'd*, 801 F. App'x 792 (D.C. Cir. 2020); *id.* ("Count II alleges that GW imprudently offered unreasonably expensive and underperforming investment options"). Dismissing the case under 12(b)(1), the court found that plaintiff "has released her claims under the Agreement and thus lacks standing to sue" because she released "any and all claims" for violation of "any federal statute," which included ERISA fiduciary breach claims. *Id.* The Seventh Circuit reached a similar result in *Howell v. Motorola, Inc.*, holding that "under the release, [plaintiff] has waived the right to bring a lawsuit challenging the Plan as a whole." 633 F.3d 552, 561 (7th Cir. 2011). As the Seventh Circuit put it, because plaintiff signed a release, "he cannot now claim that his account would have been worth even more had the defendants not breached a fiduciary duty." *Id.*  The same is true here, and dismissal is warranted for the same reasons.

*Second*, Plaintiff's "Promise Not to Sue" separately requires dismissal. As a matter of law, a covenant not to sue is distinct from a release, and must be analyzed independently. Indeed, "[t]he Fifth Circuit has recognized that a release differs from a covenant not to sue; while a covenant not to sue preserves the cause of action, a release destroys it." *See Natl. Am. Ins. Co. v. Melancon*, 1999 WL 600372, at *3 (E.D. La. Aug. 9, 1999) (collecting cases). Thus, while Plaintiff has covenanted not to "sue" Whataburger "in court," either on his behalf or on behalf any other entity (i.e. the Plan), he has breached that agreement by filing the Complaint. *Supra* at 4-5; *see e.g., Lubrizol Corp. v. Exxon Corp.,* 957 F.2d 1302, 1307 (5th Cir. 1992) (party who files a lawsuit that is within the scope of a covenant not to sue commits an "obvious" breach).

*Third*, Plaintiff agreed that he personally would not be entitled to any money or other relief "based on any agency or judicial decision, including class or collective action rulings."  As a result, Plaintiff has not suffered an injury in fact that is personal to him and that is redressable to him, *i.e.*, that "would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 590 U.S.

538, 540 (2020) (also holding that "[t]here is no ERISA exception to Article III" even when a claim is purportedly brought on behalf of an ERISA plan); *see also Russell v. Harman Int'l Indus.,* 945 F. Supp. 2d 68, 80 (D.D.C. 2013) *aff'd,* 773 F.3d 253 (D.C. Cir. 2014) (plaintiff lacked standing to bring claim on behalf of ERISA plan participants because he "released his right to any recovery even if his plan claims are successful"). This "controversy" also is moot for purposes of Article III standing. *See Genesis Healthcare Corp.* v. *Symczyk,* 569 U.S. 66, 71-72 (2013) (explaining that an Article III controversy must exist at all stages of the litigation or the action must be dismissed as moot); *see also, e.g., Prop. Disclosure Techs. LLC v. Homes,* 2015 WL 11618242, at *3 (E.D. Tex. Jan. 21, 2015) (finding "[p]laintiffs covenant not to sue eliminates any actual controversy . . ."); *Garcia v. Glob. Dev. Strategies Inc.,* 44 F. Supp. 3d 666, 671 (W.D. Tex. 2014) (summarizing *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 93 (2013)) ("holding that a covenant not to sue for purported trademark violations was sufficient to render an Article III controversy moot . . ."). Accordingly, Plaintiff's Complaint should be dismissed.

## II.    FRCP 12(B)(6) DEMANDS DISMISSAL OF PLAINTIFF'S CLAIMS

Even if Plaintiff had standing to pursue his claims under ERISA (he does not), dismissal is still appropriate under Rule 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). To be "plausible," a plaintiff's allegations must raise "more than the mere possibility of misconduct." *Id.* at 679; *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ("speculative" allegations are insufficient). "When faced with two possible explanations for a defendant's conduct, only one of which results in liability, a plaintiff cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *JSW Steel (USA) Inc. v. Nucor Corp.,* 586 F. Supp. 3d 585, 595 (S.D. Tex. 2022) (quoting *Twombly,* 550 U.S. at 557).

To state a claim for breach of ERISA's duty of prudence, a plaintiff must offer well-pled factual allegations showing that the fiduciary failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). "The focus of the inquiry is 'how the fiduciary acted,' not whether his investments succeeded or failed." *Kirschbaum*, 526 F.3d at 253; *see also Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 541-42 (5th Cir. 2016) (emphasizing that ERISA's "test of fiduciary prudence 'is one of conduct, not results'").

ERISA "does not give the federal courts a broad license to second-guess the investment decisions of retirement plans." *CommonSpirit*, 37 F.4th at 1162. Notwithstanding, fiduciaries often find themselves "between a rock and a hard place," facing litigation no matter what decision they make. *Dudenhoeffer*, 573 U.S. at 424. A motion to dismiss is therefore an "important mechanism for weeding out meritless claims." *Id.* at 425. The Court must apply "careful, context-sensitive scrutiny" when evaluating ERISA claims at the pleadings stage. *Id.*

Plaintiff must allege facts sufficient to allow the inference that the fiduciary *process* was unlawful. *CommonSpirit*, 37 F.4th at 1167 (affirming Rule 12 dismissal of imprudence claim; explaining an "after-the-fact performance gap between benchmark comparators [does not by itself] violate[] the process-driven duties imposed on ERISA fund managers"); *Meiners*, 898 F.3d at 823 (same); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022). To do so, a plaintiff must point to information "at the time of the investment without the benefit of hindsight." *Locascio v. Fluor Corp.*, 2023 WL 320000, at *6 (N.D. Tex. Jan. 18, 2023) (citing *Metzler v. Graham*, 112 F.3d 207, 209 (5th Cir. 1997)). And in all events, recognizing that ERISA fiduciaries will often face "difficult tradeoffs," the Court "must give due regard to the range of reasonable judgments a fiduciary may

make," even in the Rule 12 context. *Hughes*, 595 U.S. at 177. It is not enough for a plaintiff to allege that a better-performing investment existed in the marketplace; plaintiffs can do that in virtually every case. *CommonSpirit*, 37 F.4th at 1166; *see also Locascio*, 2023 WL 320000, at *4 ("the prudence standard normally focuses on the fiduciary's conduct in making investment decisions, and not on the results"). This is particularly true because "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous" and "elevates the possibility that a plaintiff with a largely groundless claim will simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value[.]" *St. Vincent Catholic Med. Ctr. v. Morgan Stanley*, 712 F.3d 705, 719 (2d Cir. 2013).

### A.      Plaintiff's Allegations That Just Two Plan Investment Options Underperformed During a Narrow Time-Frame Fail to State a Claim.

Applying these principles, Plaintiff has failed to state a claim that Whataburger's fiduciary process was flawed by asserting that just two—of nineteen—Plan investments modestly underperformed either their prospectus benchmark or Plaintiff's alleged comparator funds during sporadic time-periods.

#### 1.      Plaintiff's Performance-Based Allegations Do Not Create an Inference of Imprudence as a Matter of Law.

As a general matter, the Complaint does not include any well-pled allegations to show that these two investment options were outside the "range of reasonable judgments" that other plan fiduciaries make. *Hughes*, 595 U.S. at 177. In other words, the Complaint fails to allege that no reasonable fiduciaries offered these funds as investment options for their plan participants. Nor could it. As the Complaint concedes, investors held **billions** of dollars in the challenged funds—

$11 billion to the MainStay Fund and $7 billion to the Janus Fund as of year-end 2022.[6] Compl. ¶¶ 44, 56.[7]

The Complaint fails for additional reasons.

*First*, it is axiomatic that Plaintiff can infer a flawed fiduciary process when he only challenges the performance of just two of the Plan's nineteen investments options. The Fifth Circuit has explained that the prudence inquiry is focused on "how the fiduciary acted," not "whether his investments succeeded or failed." *Kirschbaum*, 526 F.3d at 253 ("the test of prudence is one of conduct, not results"). Put another way, prudence "is evaluated as part of a prudent, whole-portfolio, investment strategy," and for that reason, courts do not "infer imprudence every time a fiduciary retains a fund that fails to turn in best-in-class performance for any specific period." *Coyer v. Univar Sols. USA Inc*., 2022 WL 4534791, at *6 (N.D. Ill. Sept. 28, 2022) (citing *Meiners*, 898 F.3d at 823); *see also Luckett v. Wintrust Fin. Corp*., 2023 WL 4549620, at *4 (N.D. Ill. July 14, 2023) (same, and dismissing underperformance claims under Rule 12); *see infra* at 16-18 (collecting cases). *C.f., Hughes v. Nw. Univ.,* 63 F.4th 615, 623 (plans may "offer a wide range of investment options and fees without breaching any fiduciary duty"). There is simply no *plausible* basis to infer that Whataburger's decision-making *process* was flawed when Plaintiff appears to concede that seventeen of the Plan's investment options (over 89% of the investment

---

[6] For context, at year-end 2022, the Plan had $1,309,681 in the MainStay Fund and $1,199,533 in the Janus Fund—i.e., about 0.01% of the assets invested in those funds. *See* Ex. B at 16.

[7] That the funds allegedly experienced outflows is a red herring: while some investors (for whatever reason) took their money elsewhere does not place the two challenged funds—which still have **billions** of dollars invested in them—outside the "range of reasonable judgments" of a fiduciary. In short, the assets held by the two challenged funds demonstrate that many others deem the challenged funds well within the "range of reasonable" prudent investments. *CommonSpirit*, 37 F.4th at 1162 ("net outflows from [] funds to other investments" is not indicative of imprudence).

line-up) were prudent options, while only two (or 10% of the investment-line up) were allegedly imprudent during some narrow windows of time over the putative class period.

*Second*, and relatedly, nothing in ERISA "requires a fiduciary to pick the best performing fund." *Meiners*, 898 F.3d at 822-23; *CommonSpirit*, 37 F.4th at 1165; *Forman*, 40 F.4th at 449; *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020); *Laboy v. Bd. of Trs. of Bldg. Serv.*, 513 F. App'x 78, 79-80 (2d Cir. 2013) (affirming 12(b)(6) dismissal because plaintiff's allegations of poor performance alone did not state a claim for fiduciary breach).[8] Applying this principle, circuit courts have universally held that allegations that some other funds in the market performed better do not state a plausible fiduciary-breach claim. *See, e.g.*, *Meiners*, 898 F.3d at 822-23 ("[t]he fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [challenged funds] were an imprudent choice at the outset"); *CommonSpirit*, 37 F.4th at 1166 ("a showing of imprudence [does not] come down to simply pointing to a fund with better performance"); *Forman*, 40 F.4th at 443 (same); *White*, 752 F. App'x at 455 (affirming Rule 12(b)(6) dismissal of similar fiduciary-breach investment-performance claims because they "showed only that [the defendant] could have chosen different vehicles of investment that performed better during the relevant period"). In *Forman*, the Sixth Circuit elaborated on these principles, explaining:

> Disappointing performance in the near term and higher costs do not by themselves show "deficient decision-making," especially when we account for competing explanations and other common sense aspects of long-term investments. Different services, investment strategies, and investor preferences invariably lead to a spectrum of options—and in turn a spectrum of reasonable fee structures and performance outcomes. As a result, side-by-side comparisons of how two funds

---

[8] *C.f., Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006) (holding that a fiduciary may prudently select "funds with long-term growth potential and . . . stay with those . . . funds even during years of lower performance"); *White*, 2017 WL 2352137, at *20 (noting fiduciaries often have "long-range investment strateg[ies]," which "plainly permit" the "common practice of retaining investments through periods of under-performance").

performed in a narrow window of time, with no consideration of their distinct objectives, will not tell a fiduciary which is the more prudent long-term investment option.

40 F.4th at 443 (citations omitted); *C.f. Kirschbaum*, 526 F.3d at 253-54 (recognizing "[r]etirement investing" involves a "long-term horizon").

The Northern District of Texas agrees. In dismissing a similar fiduciary-breach claim under Rule 12(b)(6), Judge Starr held that "[p]roviding the Court with data from other investments that outperformed the [plan's] investments does little to aid the Court in evaluating the fiduciary process." *Locascio*, 2023 WL 320000, at *6.[9] *See also e.g.*, *Microsoft Corp.*, 2023 WL 3058016 (dismissing similar allegations as insufficient to state a claim, recognizing that "courts across the country have rejected claims for breach of the fiduciary duty of prudence under ERISA where the plaintiffs allege nothing more than underperformance relative to other investment vehicles"); *Tullgren v. Booz Allen*, 2023 WL 2307615 (E.D. Va. Mar. 1, 2023) (same). The reason is simple, as explained by Judge Starr: "Put bluntly, a flawed fiduciary process can result in great returns while a diligent and complete fiduciary process can result in underperformance." *Locascio*, 2023 WL 320000, at *6.

There is no reason to deviate from Judge Starr's well-reasoned analysis here. Plaintiff alleges nothing more than mere underperformance of two of the Plan's funds relative to a few others identified in the Complaint. Compl. ¶¶ 31-58. The law is clear: such allegations are not enough to infer an imprudent fiduciary *process*, particularly when there are no allegations that the

---

[9] A copy of the operative complaint in *Locascio* is attached as Ex. C, so the Court can see how similar the allegations in that case are to those alleged by Plaintiff here. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record'") (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)).

fiduciaries acted outside the "range of reasonable judgments." *Hughes*, 595 U.S. at 177. Plaintiff's allegations do not state a claim and should be dismissed for this reason alone.

### 2. Plaintiff's Underperformance Allegations Fail for Additional Reasons, Each of Which Independently Compels Dismissal.

Digging further into Plaintiff's allegations confirms that they do not state a claim because (1) Plaintiff does not offer meaningful benchmarks for the two challenged funds; and (2) Plaintiff does not allege substantial, consistent underperformance sufficient to infer that the fiduciary processed was flawed.

#### a) Plaintiff's Underperformance Allegations Fail Because They Do Not Offer Meaningful Comparators for the Challenged Funds.

*First*, even if Plaintiff's underperformance-only allegations could support an inference of imprudence (they cannot), Plaintiff fails to offer meaningful comparators for the challenged funds. This is an entirely independent basis for dismissal. Every circuit in the country has held that to *plausibly* allege a "prudent fiduciary in like circumstances" would have selected a different fund, a plaintiff must provide a "sound basis" for any performance comparison—i.e., a "meaningful benchmark" for each of the challenged investments. *Meiners*, 898 F.3d at 822; *see also CommonSpirit*, 37 F.4th at 1167; *Davis v. Salesforce.com, Inc.*, 2022 WL 1055557, at *2 n.1 (9th Cir. Apr. 8, 2022); *Albert*, 47 F.4th 570, 579; *Matney*, 80 F.4th at 1148 (plaintiff "has the burden to allege a meaningful benchmark"); *Matousek v. MidAmerican Energy, Co.*, 51 F.4th 274, 277 (8th Cir. 2022) ("[T]he key to nudging an inference of imprudence from possible to plausible is providing a 'sound basis for comparison—a meaningful benchmark'—not just alleging that 'costs are too high, or returns are too low'"). As Judge Starr explained, a plaintiff "needs to provide meaningful comparison in his pleadings to demonstrate that his selected funds are sufficiently similar benchmarks." *Locascio*, 2023 WL 320000, at *6.

This is a "challenging" requirement that involves more than identifying alternatives with "some similarities" to the funds at issue. *Meiners*, 898 F.3d at 823; *Matney*, 80 F.4th 1136 at 1154 ("absent facts alleging the [comparator funds] are similar enough to the Plan's funds, the complaint fails to supply a meaningful benchmark for comparison"); *Matousek*, 51 F.4th at 280 (plaintiff must allege a "like-for-like comparison"). Rather, it requires Plaintiff to *plead facts* showing that each of his proposed alternatives had similar investment strategies, asset allocations, and risk profiles to the challenged funds to which they are being compared. *Id. See also Wehner v. Genentech, Inc.*, 2021 WL 507599, at *10 (N.D. Cal. Feb. 9, 2021) (dismissing claims because complaint lacked allegations establishing similarity in "styles and strategies" between challenged funds and allegedly prudent alternatives); *Larson v. Allina Health Sys.*, 350 F. Supp. 3d 780, 799 (D. Minn. 2018) (dismissing a claim where plaintiffs "only pled a market alternative that is *similar*, but not *identical*, to the Fidelity shares that were actually included in the Plan") (emphasis added).

The Eighth Circuit's precedent is instructive on this point. In *Meiners*, the Eighth Circuit held that a proposed comparator fund was not a meaningful benchmark to the challenged fund because it had a slightly different allocation to bonds than the challenged fund. 898 F.3d at 823 n.2. The Eighth Circuit again rejected a similar claim in *Matousek* a few years later, this time because while the plaintiffs alleged that the comparator funds were in the same "peer group," there were no allegations that the peer group funds held "similar securities, have similar investments strategies, and reflect a similar risk profile." 51 F.4th at 274; *c.f. Perkins v. United Surgical Partners Intl., Inc.*, 2024 WL 1574342, at *3 (5th Cir. Apr. 11, 2024) (denying motion to dismiss where plaintiff alleged the challenged funds and comparator funds were "*identical* in all ways except cost") (emphasis added).

The Complaint fails this standard. For both of the challenged funds, which are actively managed, Plaintiff compares them to prospectus benchmark indexes and two, hand-picked actively managed funds. Starting with the former, pointing to a prospectus benchmark does not satisfy the meaningful benchmark standard. These are merely market indices, which are not actually investment options. *See Davis,* 960 F.3d at 485 n.4 (rejecting comparison of actively managed fund to Russell 3000 Index because it "tracks the 3,000 largest stocks in the [U.S.]" but "is not a fund, much less an actively-managed one. . ."); *Johnson v. Parker-Hannifan Corp.,* 2023 WL 8374525, at *7 (E.D. Ohio Dec. 4, 2023) (granting Rule 12(b)(6) motion to dismiss because target date "benchmark" is a "statistical data composite" and "other courts have found such an index could never serve as a meaningful benchmark for a real fund with unique investment strategies, goals and asset allocations"); *Hall v. Cap. One Fin. Corp.,* 2023 WL 2333304, at *7 (E.D. Va. Mar. 1, 2023) (same and collecting cases); *see also CommonSpirit,* 37 F.4th at 1169 (allegations that the American fund "underperformed [the] benchmark index funds consistently" do not suffice).[10] Even so, such comparisons are not meaningful here because, for example, Plaintiff's own comparator for the MainStay Fund—the JP Morgan Large Cap Growth Fund—also underperformed the same Russell 1000 Growth Index for the same time-period relevant to the Complaint. *See* Ex. D, JPMorgan Large Cap Growth Fund Prospectus, November 1, 2018 (trailing benchmark for five-year period preceding 2018, which corresponds with the start of the class period here); Ex. E, JPMorgan Large Cap Growth Fund Prospectus, November 1, 2017 (trailing

---

[10] *See also* e.g., *Tullgren,* 2023 WL 2307615, at *6 n.4 (actively managed funds "have 'distinct goals and distinct strategies'" from passively managed funds and are thus "inapt comparators" (quoting *CommonSpirit,* 37 F.4th at 1167)); *Wehner,* 2021 WL 507599, at *10; *Davis,* 960 F.3d at 485 n.4 (finding that a market index listed in the ERISA plan's disclosures was not a meaningful benchmark for a breach of fiduciary duty claim because the index "is not a fund, much less an actively managed one").

benchmark by 2.50% in the five-year period preceding 2017). How can the Russell 1000 Growth Index serve as a meaningful benchmark for evaluating the prudence of an investment option when Plaintiff's own alleged "prudent" alternative trailed it too?

Plaintiff's comparison of each of the challenged funds to two alternative actively managed funds fares no better. For both challenged funds, the Complaint is devoid of allegations that either of Plaintiff's proposed comparators involve similar securities, have similar investment strategies, or reflect a similar risk profile—or anything else about the funds beyond their generic categorizations as "large cap" or "small/mid cap" growth funds. These bare allegations do not satisfy the meaningful benchmark comparison, and a closer review of Plaintiff's alleged comparators reveals why.

***MainStay Fund***. Plaintiff compares the MainStay Fund to two actively managed comparator funds: the JP Morgan Large Cap Growth Fund and the Fidelity Growth Company Fund. Neither is a meaningful benchmark. The JP Morgan Large Cap Fund uses derivatives to meet its investment goals, and those derivatives carry leverage and other volatility risks that the MainStay Fund does not possess.[11] The Fidelity Growth Company Fund is likewise inapt, as it does not even track the same benchmark as the Mainstay Fund. Rather, it tracks the Russell 3000 Growth Index, which is an "all-cap" index including smaller and mid-cap securities. *Compare* Ex. G, MainStay Large Cap Growth Fund Prospectus, February 28, 2018 ("The Russell 1000 Growth Index measures the performance of the ***large cap growth*** segment of the US equity

---

[11] Ex. F, JP Morgan Large Cap Growth Fund Summary Prospectus, November 1, 2023 ("Derivatives, which are instruments that have a value based on another instrument, exchange rate or index, may be used as substitutes for securities in which the Fund can invest."; "Derivatives, including futures contracts, may be riskier than other types of investments and may increase the volatility of the Fund. Derivatives may be sensitive to changes in economic and market conditions and may create leverage, which could result in losses that significantly exceed the Fund's original investment.").

universe. It includes those Russell 1000 companies with higher price-to-book ratios and higher forecasted growth values."); *with* Ex. H, Fidelity Growth Company Fund Prospectus, January 29, 2018 ("Russell 3000 Growth Index is a market capitalization-weighted index designed to measure the performance of the ***broad growth segment*** of the U.S. equity market.") (emphases added). That these funds—with different holdings and a different benchmark—performed differently is not a basis for inferring imprudent fiduciary conduct. *Infra*.

***Janus Fund***. Plaintiff alleges the Wasatch Core Growth Fund and the Putnam Small Cap Growth Fund[12] are superior to the Janus Fund because they both more consistently outperformed their benchmark. Compl. ¶ 57. But neither of these funds have the same benchmark as the Janus Fund. The Janus Fund uses the Russell *2500* Growth Index as its primary benchmark. *Id.* But the Wasatch Core Growth Fund uses Russell *2000* Growth Index as its benchmark. Ex. I, Wasatch Core Growth Fund Summary Prospectus, January 31, 2020. And the Putnam Small Cap Growth Fund likewise uses the Russell *2000* Growth Index as its benchmark. Ex. J, Putnam Small Cap Growth Fund Prospectus, October 30, 2020. That these funds use different benchmarks confirms that they do not have the same investment strategy and take the same risks; that is, they are not "meaningful benchmarks." And moreover, the Janus Fund actually *outperformed* the benchmark the Wasatch and Putnam funds used:

| As of 12/31/20 | 5 years | 10 years | Since Inception (2/25/05) |
|---|---|---|---|
| Janus Fund | 16.93% | 14.70% | 13.69% |
| Russell 2000 Growth Index | 16.36% | 13.48% | 10.55% |

---

[12] Plaintiff refers to the "Putnam Cap Growth Fund," which does not exist. Whataburger assumes he is referring to the Putnam Small Cap Growth Fund based on the Complaint's other comparisons.

*See e.g.*, Ex. K, Janus Henderson Triton Fund Summary Prospectus, January 28, 2021.

| As of 12/31/21 | 5 years | 10 years | Since Inception (2/25/05) |
|---|---|---|---|
| Janus Fund | 16.18% | 15.18% | 13.28% |
| Russell 2000 Growth Index | 14.53% | 14.14% | 10.08% |

Ex. L, Janus Henderson Triton Fund Summary Prospectus, January 28, 2022.[13]

In other words, the Janus Fund outperformed the same benchmark that Plaintiff alleges the other funds outperformed. But it uses a different benchmark because it follows a different investment strategy and has different holdings.

In short, Plaintiff does not allege—nor could he—that the comparator funds have the same investment strategies, or invest in the same industries as the challenged funds, or even take on the same risks and have the same aims. These differences matter. Making a "side-by-side comparison of how two funds performed . . . with no consideration of their *distinct objectives* is unhelpful for determining which is the more prudent choice." *Matney*, 2023 WL 5731996, at *12 (citation omitted). After all, saying that two funds invest in companies with "large market capitalizations" or "medium market capitalizations" or "growth" stocks or "value" stocks, Compl. ¶¶ 45-57, says nothing about whether the funds invest in "large" or "medium" technology companies, or healthcare companies, or real estate companies, or banks, or fintech companies or other financial services companies, or U.S. companies with significant international exposure. Merely sharing

---

[13] It is unsurprising that these funds performed differently considering their different makeups, which further shows that they are not meaningful benchmarks. *Compare* Ex. M, Morningstar Portfolio Page, Janus Fund (Janus Fund invests 5.45% in financial services and 24.72% in healthcare) *with* Ex. N, Morningstar Portfolio Page, Wasatch (Wasatch Core Growth invests 15.77% in financial services and 15.11% in healthcare); *Compare* Ex. M, Morningstar Portfolio Page, Janus Fund (Janus Fund invests in communication companies) *with* Ex. O, Morningstar Portfolio Page, Putnam (Putnam Small Cap Growth Fund does not).

some similarities is not enough to plead a "meaningful benchmark." *Meiners*, 898 F.3d at 823 & n.2 (a plaintiff cannot "dodge the requirement for a meaningful benchmark by merely finding a less expensive [or better performing] alternative fund or two with some similarity" and affirming dismissal where challenged funds had a "higher allocation of bonds" than the alternatives); *Davis*, 960 F.3d at 486 (affirming Rule 12(b)(6) dismissal where the challenged fund had "around 30% of its portfolio invested in international securities," but the comparator funds "ha[d] a lower percentage of international stocks"); *Smith*, 37 F.4th at 1167 (dismissing claims comparing performance of two suites of funds because they had "distinct goals and strategies" even though they were both target date funds with the same target date); *Luckett*, 2023 WL 4549620, at *3 (dismissing imprudence claim on Rule 12 because the challenged funds and alleged comparator funds had different glide paths); *Hall*, 2023 WL 2333304, at *6 (similar).

> **b)** **Plaintiff Does Not Allege Substantial and Consistent Underperformance Sufficient to Support an Inference of Imprudence.**

Second, the performance differences that Plaintiff complains about are not substantial or consistent enough to move his claim from "possible to plausible." *Iqbal*, 556 U.S. at 678. This is yet another independent basis to dismiss Plaintiff's underperformance claim.

***MainStay Fund***. The Complaint alleges the MainStay underperformed by very small amounts over a very limited time. In fact, the Complaint ***never*** alleges it underperformed by more than ***1.00%***. *Id.* ¶¶ 34-36, 38-41. Plaintiff, moreover, admits that the MainStay Fund's "three-year returns exhibited some modest improvement in 2019 and 2020." Compl. ¶ 38. Tellingly, while Plaintiff alleged the MainStay Fund's three-year returns underperformed in 2018, he is silent about the fund's three-year performance in 2019 and 2020 (because it outperformed its benchmark). Plaintiff further concedes that "the MainStay Fund experienced a brief period of outperformance

over the five-year time horizon in 2021." *Id*. at ¶ 42. Even by *his chosen metrics*, Plaintiff was not able to plead consistent underperformance for the MainStay Fund.

***Janus Fund***. Plaintiff does not allege the Janus Fund underperformed until 2020. Compl. ¶¶ 34-41, 46-58. Nor does he allege the Janus Fund underperformed from 2022 through the present. Compl. ¶¶ 46-58. In other words, Plaintiff has alleged that during the six-year putative class period, the Janus Fund underperformed for two years, 2020-2021 (during the volatility of the pandemic). But the Complaint has no criticism of the fund's performance before that time or after it. Plaintiff's complaints about the Janus's Funds claim "underperformance" is similarly slight—alleging it trailed its benchmark by just 0.58% in Q1 2020. *Id*. ¶ 47.

In sum, Plaintiff does not identify a *single year* where more than one of the Plan's investments allegedly underperformed. These allegations are far from the consistent and substantial underperformance that Plaintiff must allege to plausibly suggest the challenged funds fell outside the range of reasonable investments available to the Plan; rather, Plaintiff's allegations are consistent with sort of fluctuations expected in an investment's "long-term horizon." *Kirschbaum*, 526 F.3d at 253-54.

That is why courts routinely hold that such modest, sporadic performance differences are to be expected when evaluating investment options and do not infer an imprudent process. For example, in *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, plaintiffs alleged that the fiduciaries imprudently retained certain challenged funds, but in their complaint admitted "that the funds at issue experienced 'certain periods of slight outperformance.'" 2019 WL 4466714, at *9 (S.D.N.Y. Sept. 18, 2019). The court therefore dismissed the claims because by "Plaintiffs' admissions . . . [the] funds challenged in the SAC did not 'consistently underperform' benchmarks"—regardless of whether the outperformance was "slight." *Id.* Since "periods of both outperformance and

underperformance" are "common amongst a portfolio of investments," intermittent underperformance said nothing about whether fiduciaries were asleep at the switch. *Id.* at *8-9. *See also Locascio*, 2023 WL 320000, at *1 ("Sometimes stocks underperform."). This Court should reach the same conclusion.[14]

\*     \*     \*

There are important reasons that courts require plaintiffs to *plead* meaningful benchmarks, and consistent and substantial underperformance, in order to state a claim. "Retirement investing" involves a "long-term horizon." *Kirschbaum*, 526 F.3d at 253-54. And it is the nature of investing (and measuring investment performance) that investments—even good ones—have periods where they perform relatively better and other periods when they perform relatively worse. Plaintiff here does not allege that these two challenged funds actually lost money (or that he lost money investing in them); instead, he merely alleges that other funds performed better during a few years of a six-year period. But to state the obvious, when investment performance is measured on a relative basis (like Plaintiff's comparisons in the Complaint here), only one fund can be the "best" over any period of time, so every other fund can be described as "underperforming," relatively speaking.[15]

---

[14] *See also, e.g.*, *Cho v. Prudential Ins. Co. of Am.*, 2021 WL 4438186, at *9 (D.N.J. Sept. 27, 2021) (plaintiffs did not allege "sufficiently substantial" underperformance to state a claim as to fund for which "five-year trailing performance had underperformance percentages ranging from 0.07% to 3.71%," and "ten-year trailing performance reflected underperformance ranging from 1.19% to 2.86%"); *Forman v. TriHealth, Inc.*, 563 F. Supp. 3d 753, 764 (S.D. Ohio 2021) (finding underperformance ranging from 1.00% to "just over" 2.00% was "simply too small to raise a plausible breach of the fiduciary duty claim"), *aff'd in relevant part*, 40 F.4th 443 (6th Cir. 2022); *Bekker v. Neuberger Berman Grp. LLC*, 2018 WL 4636841, at *2, 7 (S.D.N.Y. Sept. 27, 2018) (plaintiff failed to state a claim for imprudence based on retention of a fund that provided an annualized return of 2.97% over a ten-year period when its benchmark provided an annualized return of 7.42% over the same period).

[15] Indeed, Plaintiff could just as easily allege that one of his comparator funds was imprudent, because the other comparator fund performed better. It doesn't matter which fund did better or worse; you can make the allegation regardless.

But those sorts of allegations say nothing about the process for selecting and monitoring an investment. And they ignore the long term nature of retirement investing. As the Sixth Circuit explained regarding similar allegations:

> Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that breaches a fiduciary duty. Precipitously selling a well-constructed portfolio in response to disappointing short-term losses, as it happens, is one of the surest ways to frustrate the long-term growth of a retirement plan.

*CommonSpirit*, 37 F.4th at 1166. The Sixth Circuit further explained that "[a]ny other rule would mean that every actively managed fund with below-average results over the most recent five-year period would create a plausible ERISA violation." *Id.* "Unless and until it becomes feasible to have all actively managed funds perform above average, that would lead to the disappearance of this option in ERISA plans." *Id.* Yet that is what Plaintiff's allegations amount to. *See also Beldock*, 2023 WL 3058016, at *1-2 (rejecting claims based on rolling five-year performance covering over eleven years); *Hall*, 2023 WL 2333304, at *6 (same). Plaintiff's fiduciary breach claim should be dismissed for failure to state a claim.

**B.    Plaintiff Fails to State a Failure-to-Monitor Claim.**

In Count II, Plaintiff alleges that Whataburger failed to adequately monitor other Plan fiduciaries with respect to the Plan's investment options. *See* Compl. ¶¶ 83-91. But Plaintiff's failure-to-monitor claim is a derivative theory that collapses with his predicate fiduciary-breach claim. *See Singh v. RadioShack Corp.*, 882 F.3d 137, 150 (5th Cir. 2018) (holding that "duty-to-monitor claims recognized by other courts inherently require a breach of duty by the appointed fiduciary" and "[b]ecause the committee did not breach any duty to the plan, Plaintiffs' duty-to-monitor claims against the Director Defendants collapse)*; see also Camera v. Dell Inc.*, 2014 WL 960897, at *5 (W.D. Tex. Feb. 26, 2014) ("[Plaintiff] has failed to plead a plausible breach-of-

fiduciary-duty claim against any defendant, and therefore cannot maintain a derivative failure-to-monitor claim.").[16] Therefore, Plaintiff's failure-to-monitor claim should be dismissed alongside Plaintiff's fiduciary-breach claim.

### C.      Plaintiff Fails to State a Knowing Breach of Trust Claim.

In Count III, Plaintiff alleges "[i]n the alternative" that if any defendant is not a fiduciary, the Court find him or her liable "for the conduct at issue here." Compl. ¶¶ 92-94. As with the derivative duty to monitor claim, a knowing breach of trust claim "is derivative of the underlying fiduciary breach" of a duty of prudence. *Tullgren*, 2023 WL 2307615, at *8 *Locascio*, 2023 WL 320000, at *2 (same). Indeed, Plaintiff's counsel has elsewhere "agreed at oral argument on January 30, 2023, that if the court dismissed their claims for breach of the duties of prudence and loyalty, it need not reach their claims for failure to monitor, co-fiduciary breaches, or knowing breaches of trust." *Beldock*, 2023 WL 3058016, at *4 (dismissing underlying prudence claim and therefore dismissing duty to monitor and knowing breach of trust counts). Because Plaintiff has failed to plead a breach-of-fiduciary-duty claim, his knowing breach of trust claim fails as well.[17]

### CONCLUSION

For the foregoing reasons, Whataburger respectfully requests that the Court dismiss the Complaint in its entirety and with prejudice.

---

[16] It bears noting the Fifth Circuit "has 'never recognized [a] theory of ERISA fiduciary liability' that holds corporate directors personally liable for failing to monitor fiduciaries[.]" *Singh*, 882 F.3d at 150 (quoting *Perez v. Bruister*, 823 F.3d 250, 260 n.10 (5th Cir. 2016)).

[17] The knowing breach of trust claim also fails for the basic reason that it offers nothing more than "labels and conclusions," reciting elements of the claim rather than presenting well-pled facts that any Defendant "possessed the requisite knowledge and information to avoid the fiduciary breaches at issue here." *Twombly*, 550 U.S. at 545; Compl. ¶ 94.  The conclusory nature of the allegation is particularly apparent when considering that Plaintiff has named twenty Doe defendants.

Dated: June 17, 2024                    By: */s/ Lauren A. Valkenaar*

Lauren A. Valkenaar
Texas Bar No. 24088570
VALKENAAR PLLC
7898 Broadway, Suite 120
San Antonio, Texas 78209
Telephone: +1.210.633.6906
Facsimile: +1.210.634.2566
lvalkenaar@valkenaarlaw.com

/s/ *Jeremy P. Blumenfeld*

Jeremy P. Blumenfeld (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: +1.215.963.5000
Facsimile:  +1.215.963.5001
jeremy.blumenfeld@morganlewis.com

/s/ *Keri L. Engelman*

Keri L. Engelman, (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
Telephone: +1.617.341.7700
Facsimile:  +1.617.341.7701
keri.engelman@morganlewis.com

/s/ *Samuel D. Block*

Samuel D. Block (*pro hac vice*)
Christopher B. Dempsey
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Telephone: +1.312.324.1715
Facsimile:  +1.312.324.1001
sam.block@morganlewis.com
chris.dempsey@morganlewis.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF/CM e-filing system to all counsel of record who are deemed to have consented to electronic service on this 17th day of June 2024.

*/s/ Lauren A. Valkenaar*