# Exhibit A

# SEPARATION AND RELEASE AGREEMENT

**1.**   *Parties.* The parties to this Agreement are **Manuel Esquivel Jr**, the Employee (for yourself, your family, beneficiaries and anyone acting for you) ("you," "your"), and your Employer, **Whataburger Restaurants LLC** ("Whataburger").

**2.**   *End of Employment.* Your employment with Whataburger will end on **March 3, 2023** ("Separation Date"). Regardless of whether you sign this Agreement, you will receive your final pay including accrued and unused vacation. All other compensation and benefits provided by or through the Employer will end on the Separation Date.

**3.**   *Severance Pay & Benefits.* As consideration for your promises in this Agreement, if you enter into and abide by this Agreement (e.g. return company property as detailed below) and continue to comply with all company policies and procedures after you sign this Agreement, you will receive the following:

- **Severance Payment: $18,596.86** minus applicable deductions and withholdings, by direct deposit or check made payable to you, less all normal payroll deductions and taxes, and inclusive of any and all bonus and incentives as of the Separation Date.

- **COBRA Payment:** Your Whataburger group medical, dental and vision benefits terminate as of the Separation Date. In accordance with federal law ("COBRA"), you may, however, elect to continue your coverage in the group medical, dental and vision benefits under COBRA for generally up to eighteen (18) months from the Separation Date or, as otherwise provided for under COBRA rules and regulations. As further consideration for entering into and not revoking this Agreement, you will receive the gross amount of **$6,443.99**, which is intended to help cover your approximate costs of COBRA continuation of your current group health coverage for **10** weeks. This amount will be grossed up for applicable withholdings and will be paid by direct deposit or check made payable to you within the same time period and conditions for receipt provided in the Severance Pay subsection immediately above. In the event you elect continuation of coverage under COBRA you are responsible for paying your COBRA continuation coverage premiums.

- **Additional Consideration Payment:** As further consideration for entering into and not revoking this Agreement, you will receive the gross amount of **$1,729.16,** less all normal payroll deductions and taxes, and inclusive of any and all bonus and incentives as of the Separation Date.

- **Method and Timing of Payment:** The Severance Payment together with the COBRA Payment and Additional Consideration Payment amounts are collectively referred to in this Agreement as the "Severance Pay." The Severance Pay is payable within fourteen (14) business days after you sign this Agreement and after the revocation period has expired and you have not revoked this Agreement (described in section 22 below, titled: Time to Revoke), provided such payroll date is at least three (3) business days after such date. Whataburger will issue an IRS Form W-2 to you reflecting this payment. Unless you provide Whataburger with written notice of a bank account or address change or otherwise arrange with Whataburger to receive any Severance Pay payment personally, the Severance Pay payment will deposited directly to the bank account you currently have enrolled in direct deposit.

- **Mobile/Cell phone:** As additional consideration for your promises and agreements made by you in this Agreement, you may keep the Whataburger cell/mobile phone presently assigned to you, provided you promptly assume the contract for that phone and hereby release Whataburger from all claims in connection with that phone. If you do not sign this Agreement or otherwise revoke this Agreement, you must immediately return to Whataburger such cell/mobile phone.

You understand and agree that the Severance Pay and Benefits described in this Section 3 may be reduced and coordinated with other payments and benefits consistent with the terms of the Whataburger Limited Severance Program ("LSP"), which are incorporated into this Agreement. A copy of the LSP Summary Plan Description has been provided to you along with this Agreement.

You agree that the Severance Pay and Benefits are items of value being provided in exchange for your promises in this Agreement, and that you are not otherwise entitled to the Severance Pay and Benefits. You acknowledge and agree that you are not entitled to additional severance pay beyond the terms of this Agreement.

All other Whataburger benefits, including but not limited to (and to the extent you are a participant in) Whataburger paid accidental death and dismemberment insurance, short and long-term disability plans, matching gifts, deferred compensation, bonus, incentive, vacation accrual, holiday pay, 401(k) contributions, etc., cease on the Separation Date although you shall remain entitled to any vested 401(k) benefits in accordance with the terms of your respective plans.

**4.** *General Release.* You release Whataburger (plus its parents, subsidiaries, affiliates, predecessors, successors and any other entity related to it and all of its and their past and present directors, officers, employees and anyone else acting for any of them, and including trustees, fiduciaries and others affiliated with Whataburger's benefit plans – all together "Releasees") from all claims of any type to date, known or unknown, suspected or unsuspected, to the fullest extent allowed by law, including but not limited to anything to do with your employment or the end of your employment. This means you give up all claims and rights related to:

- pay, compensation, or benefits including bonuses, commissions, equity, expenses, incentives, insurance, paid/unpaid leave, profit sharing, or separation pay/benefits;

- compensatory, emotional or mental distress damages, punitive or liquidated damages, attorney fees, costs, interest or penalties;

- violation of express or implied employment contracts, covenants, promises or duties, intellectual property or other proprietary rights;

- unlawful or tortious conduct such as assault or battery; background check violations; defamation; detrimental reliance; fiduciary breach; fraud; indemnification; intentional or negligent infliction of emotional distress; interference with contractual or other legal rights; invasion of privacy; loss of consortium; misrepresentation; negligence (including negligent hiring, retention, or supervision); personal injury; promissory estoppel; public policy violation; retaliatory discharge; safety violations; posting or records-related violations; wrongful discharge; or other federal, state or local statutory or common law matters;

- discrimination, harassment or retaliation based on age (including Age Discrimination in Employment Act or "ADEA" claims), benefit entitlement, citizenship, color, concerted activity, disability, ethnicity, gender, gender identity and expression, genetic information, immigration status, income source, jury duty, leave rights, military status, national origin, parental status, protected off-duty conduct, race, religion, retaliation, sexual orientation, union activity, veteran status, whistleblower activity (including Sarbanes-Oxley, Dodd-Frank and False Claims Act claims), other legally protected status or activity; or any allegation that payment under this Agreement was affected by any such discrimination, harassment or retaliation;

- claims under Title VII of the Civil Rights Act of 1964; the 1991 Civil Rights Act;  the Americans with Disabilities Act of 1990 and ADA Amendments Act of 2008; the Older Workers Benefit Protection Act; the Vocational Rehabilitation Act of 1973; 42 U.S.C. Section 1981, 1986 and 1988; the Genetic Non-Discrimination Act; the Employee Retirement Income Security Act; the Equal Pay Act of 1963; the Immigration Reform and Control Act of 1986; Executive Orders 11246 and 1114;  the National Labor Relations Act, as amended; the Occupational Safety and Health Act; the Family and Medical Leave Act of 1993; the Worker Adjustment and Retraining Notification Act; Uniform Service Employment and Reemployment Rights Act; Fair Credit Reporting Act; and Federal Common Law; Texas Labor Code (including, without limitation, Chapters 21, 61  406, and 451), all as amended; and the common law of the State of Texas;

- any participation in any class or collective action against any Releasee; and

- claims for damages in an individual capacity or on behalf of another person or entity.

**5.** *Release Exclusions/Employee Protections.* The release provisions of this Agreement exclude: claims arising after you sign this Agreement; claims for breach of this Agreement; and claims that cannot be waived, such as for unemployment or worker's compensation benefits. Nothing in any part of this Agreement limits your rights to: (i) file a charge with any administrative agency, such as the U.S. Equal Employment Opportunity Commission, National Labor Relations Board or a state fair employment practices agency, or communicate directly with or provide information (including testimony) to an agency, or otherwise participate in an agency proceeding; (ii) testify accurately in administrative, legislative, or judicial proceeding pursuant to subpoena or court order to a written request from an administrative agency or legislature, or in court pursuant to subpoena or court order; or (iii) communicate with law enforcement or your attorney. You nonetheless give up all rights to any money or other individual relief based on any agency or judicial decision, including class or collective action rulings.

**6.** *Promise Not To Sue.* A "promise not to sue" means you promise not to sue any Releasee in court. This is different from the General Release above. Besides releasing claims covered by the General Release, you agree never to sue any Releasee for any reason covered by the General Release. Despite this Promise Not To Sue, however, you may file suit to enforce this Agreement or to challenge its validity under the ADEA. If you sue a Releasee in violation of this Agreement: (i) you shall be required to pay that Releasee's reasonable attorney fees and other litigation costs incurred in defending against your suit; or alternatively (ii) Whataburger can require you to return all but $100.00 of the money and benefits provided to you under this Agreement. In that event, Whataburger shall be excused from any remaining obligations that exist solely because of this Agreement.

**7.   *Whistleblowing.*** You agree that (i) no one has interfered with your ability to report within Whataburger possible violations of any law, and (ii) it is Whataburger's policy to encourage such reporting.

**8.   *Return of Employer Property.*** You have returned (or you will before receiving any separation pay/benefits) all Whataburger property you possessed or controlled, including any company vehicle, confidential information, laptop or other computer, other business equipment, credit cards, entry badges, keys, software or work product. Whataburger property includes all originals plus hard copies and electronic versions of all documents, such as e-mails, facsimiles, files, handbooks, letters, manuals, memoranda, power points, records and reports. You represent that you have not retained and will not retain any copies, duplicates, reproductions, computer files or excerpts thereof. All Whataburger property must be returned in good condition.

**9.   *Future Cooperation.*** You agree to make yourself available to assist Whataburger with transitioning your duties as well as with any investigations, legal claims, or other matters concerning anything related to your employment. You specifically agree to make yourself available to Whataburger upon reasonable notice for interviews and fact investigations, to testify without requiring service of a subpoena or other legal process, and to voluntarily provide Whataburger any employment-related documents you possess or control. "Cooperation" does not mean you must provide information favorable to Whataburger; it means only that you will upon Whataburger's request provide information you possess or control. If Whataburger requests your cooperation, it will reimburse you for reasonable time and expenses, provided you submit appropriate documentation.

**10.   *Non-Disparagement.*** Except as provided in this Agreement's Release Exclusions/Employee Protections section, you promise not to do or say anything, verbally or in writing, directly or indirectly, that reflects negatively on or otherwise detrimentally affects any Releasee. However, nothing in this Section or elsewhere in this Agreement prevents you from discussing or disclosing information about alleged unlawful acts in the workplace, such as harassment, discrimination, or any other conduct that you have reason to believe is unlawful, or from assisting or communicating with others about employment terms or working conditions, or engaging in or refraining from concerted activities protected by the National Labor Relations Act.

**11.   *Non-Admission.*** Neither Whataburger's offer reflected in this Agreement nor any payment under this Agreement are an admission that you have a viable claim against Whataburger or any other Releasee. This Agreement does not constitute an admission of any wrongdoing or violation of local, state, or federal law and each Releasee denies all liability.

**12.   *Confidentiality of Severance Pay & Benefits.*** The amounts of Severance Pay & Benefits described in Section 3 of the Agreement are strictly confidential. You will not communicate those terms to any third party, whether verbally or in writing, by any means, including by social media such as Twitter and Facebook and the like. Except as required by law, you have not disclosed and will not disclose those amounts, to anyone except your immediate family members and your legal/financial advisors. Each of them is bound by this Confidentiality of Agreement provision, and a disclosure by any of them is a disclosure by you.

**13. *Other Post-Employment Restrictions.***

- **Confidential Employer Information.** You will not disclose or use any Confidential Employer Information other than for Whataburger's benefit, except as required by law. Confidential Employer Information is not limited to trade secrets; it includes any non-public Employer information related to Whataburger's business (or the business of any entity/person with which Whataburger does business), such as budgets, customer/client lists, development, finances, forms, investigations, legal proceedings, management, marketing, operations, patents, pricing, research, resources, strategies, systems or technologies. You remain bound by any confidential information provisions of any prior agreement with Whataburger. You will inform Whataburger immediately if you receive a legal demand to disclose Confidential Employer Information, and you will not disclose such information while Whataburger obtains a judicial ruling regarding the demand. Notwithstanding the above, pursuant to the federal Defend Trade Secrets Act, you cannot be held criminally or civilly liable under any federal or state trade secret law for disclosing a trade secret if that disclosure is made: (i) in confidence to a federal, state or local government official, either directly or indirectly, or to any attorney, and for the sole purpose of reporting or investigating a suspected violation of law; or (ii) in a complaint or other document filed in a lawsuit or similar proceeding, provided that filing is made under seal. "Confidential Employer Information" does not include information regarding employment terms or working conditions [except to the extent that your specific job duties include maintaining the confidentiality of such information, e.g., an administrative assistant whose job includes compiling and maintaining private employee information].

- **Reasonable Restrictions.** You agree that the post-employment restrictions above are: reasonable in duration, geographic area and scope; and necessary to protect Whataburger's goodwill and other business interests. You further agree that breaching any of those covenants will cause Whataburger immediate irreparable harm and will entitle Whataburger to temporary and permanent injunctive relief.

**14.  *Applicable Law, Venue and Attorney's Fees.*** This Agreement shall be interpreted under federal law if that law governs, and otherwise under the laws of the State of Texas, without regard to its choice of law provisions. The venue (location of any lawsuit) shall be solely in the state or federal courts located in Bexar County, Texas. To the extent permitted by law, in any legal proceeding involving any breach or claimed breach of any part of this Agreement, the prevailing party shall be entitled to recover their attorney's fees and costs, in addition to any other damages available at law or in equity.

**15. *Dispute Resolution.*** Any dispute regarding this Agreement will be decided through binding arbitration to take place: (i) in the state where you worked when you separated from employment and (ii) under the Whataburger Arbitration Agreement. Excluded from this Dispute Resolution requirement are pre-judgment actions for injunctive relief to enforce the terms of this Agreement. Both parties waive their right to a jury trial.

**16. *Severability.*** If a court (or arbitrator) finds any part of this Agreement unenforceable, that part shall be modified and the rest enforced. If a court (or arbitrator) finds any such part incapable of being modified, it shall be severed and the rest enforced.

**17. *Enforcement.*** If you breach this Agreement, Whataburger shall be entitled to preliminary and permanent injunctive relief plus attorneys' fees Whataburger incurs in enforcing this Agreement, unless

otherwise expressly provided elsewhere in this Agreement, plus any additional relief determined to be appropriate. A decision not to enforce this Agreement does not waive future enforcement.

**18.** *Medicare Secondary Payer.* Nothing in this Agreement prevents either party from: (i) addressing any claim for reporting violations, penalties, or reimbursement liabilities under the Medicare Secondary Payer law or the Medicare, Medicaid, and SCHIP Extension Act of 2007; (ii) communicating information about this Agreement for compliance purposes to the Department of Health and Human Services or the Centers for Medicare & Medicaid Services; or (iii) otherwise complying with the above laws. In addition, you agree to indemnify and defend Whataburger against any loss or liability it incurs due to Medicare conditional payments related to the accident, injury, or illness underlying this settlement.

You have consulted with an attorney before signing this Agreement (or been advised by this Agreement of your right to do so) regarding any obligation of to either party to reimburse Medicare for conditional payments related to the accident, injury, or illness underlying this settlement. No mistake of law or fact by either party regarding any obligation to reimburse Medicare shall nullify and void this Agreement.

**19.** *Group Separation Information.* You received, together with this Agreement (attached as **Attachment A**), a list of group program eligibility factors, selection criteria and time limits, plus job titles and ages of all eligible/selected employees and non-eligible/non-selected employees in the same job classification or organizational unit.

**20.** *Entire Agreement.* This Agreement is the complete understanding between you and Whataburger, except that the Whataburger Arbitration Agreement, Whataburger Confidentiality, Conflict of Interest Disclosure and Non-Solicitation Agreement, and any other written confidentiality agreement, if applicable, shall survive the separation of your employment, shall remain in full force and effect, and are incorporated for all purposes in this Agreement.  This Agreement otherwise replaces any other agreements, representations or promises, written or oral. You understand and agree that if any terms of this Agreements conflict with the Whataburger Confidentiality, Conflict of Interest Disclosure and Non-Solicitation Agreement, the terms of this Agreement will control.

This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement on the part of each of the undersigned. Execution of a facsimile or electronic copy shall have the same force and effect as execution of an original.

**21.** *Time to Consider.* You have **45 calendar days** to consider this Agreement after receiving it. Consistent with this review period, you must sign and return this Agreement to Whataburger no later than the close of business on the 46th calendar day after the day you receive it if you want to receive the severance pay/benefits listed at the beginning of this Agreement. You and Whataburger agree that any changes of any kind that either you or Whataburger agree to make to this Agreement after you receive the Agreement will not extend the amount of you have to consider the Agreement, including all material or non-material changes.

**22.** *Time to Revoke.* After you sign this Agreement, you have **7 days** to revoke it by sending **written notice** of revocation to Whataburger at the following e-mail address: LegalResponseTeam@wbhq.com, or sent by fax at (210) 476-6280 or by registered mail to the Office of General Counsel, Employment at 300 Concord Plaza Drive San Antonio, Texas, 78216 and **such revocation notice actually must be**

**received within the 7 day revocation period.** For example, if you choose to mail your revocation, the revocation must be received by Whataburger within the revocation period. This Agreement is not effective or enforceable until the revocation period expires. If you revoke this Agreement, you will not receive the Severance Pay/Benefits described in this Agreement.

**23. *Other Representations.*** You agree that as of the date you signed this Agreement:

- You have received all pay, compensation, bonus, incentives, benefits, leave, time off, and/or expense reimbursements you are due to date, including for overtime or vacation;

- You have not suffered any on-the-job injury for which you have not already filed a claim, and the end of your employment is not related to any such injury;

- You do not have any pending lawsuits against Whataburger;

- You do not have any pending charges or claims or actions against Whataburger with any state, local, or federal agency;

- You were advised in writing, by getting a copy of this Agreement, to consult with an attorney before signing below;

- You have had the opportunity to negotiate this Agreement with Whataburger, and this Agreement shall not be construed for or against either party as a drafter of its terms;

- You have relied on your own informed judgment, or that of your attorney if any, in deciding whether to sign this Agreement;

- You understand all the provisions of this Agreement and understand the consequences of executing this Agreement; and

- You are signing this Agreement knowingly and voluntarily.

You and Whataburger execute this Separation and Release Agreement as of the day and year last written below.

**Employee**

By: *Manuel Esquivel Jr*
**Manuel Esquivel Jr**
Dated: 3/15/2023 | 10:46 AM CDT

**Whataburger Restaurants LLC**

By: *Peggy Rubenzer*
Peggy Rubenzer
SVP, Chief People Officer
Dated: 3/15/2023 | 8:21 PM PDT